IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL LEE WILLIAMS,　　§
　　　　*Petitioner*,　　　　　§
　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　§　　Civil Action No. H-08-2162
　　　　　　　　　　　　　　§
NATHANIEL QUARTERMAN,　§
　　　　*Respondent*.　　　　　§

## MEMORANDUM OPINION AND ORDER

Michael Lee Williams, a state inmate proceeding *pro se* and *in forma pauperis*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his loss of street time credit following parole revocation. Respondent filed a motion for summary judgment (Docket Entry No. 16), to which petitioner responded. (Docket Entries No. 24, 25.)

Based on consideration of the pleadings, the motion and responses, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

## I.  PROCEDURAL BACKGROUND

Petitioner pleaded guilty to aggravated robbery in 1989 and was sentenced to twenty years' incarceration. He was released to parole on November 18, 1993, which was revoked on December 30, 1999. Following his return to prison, petitioner was denied street time credit for the time he was on parole prior to revocation. He filed an administrative time

credit dispute resolution proceeding on June 26, 2002, but prison officials determined that the sentence had been correctly calculated.

Petitioner did not pursue state habeas relief challenging the loss of street time credit. He filed the instant federal habeas petition on July 7, 2008, seeking reinstatement of the street time credit he accumulated during the unsuccessful parole.

Respondent moves for summary judgment, and argues that petitioner's claims are unexhausted, barred by limitations, and without merit.

## II.  ANALYSIS

Respondent correctly asserts that petitioner failed to present his claims to the Texas Court of Criminal Appeals.  Nevertheless, because petitioner's claims are without merit and/or barred by limitations, the Court will not dismiss this case for failure to exhaust.  *See* 28 U.S.C. §§ 2254(b)(1)(B)(i), (ii); § 2254(b)(2).

### A.    Limitations and Statutory Tolling

This habeas petition is governed by the one-year period of limitations provided in 28 U.S.C. § 2244(d)(1) ("AEDPA"), as follows:

(d)(1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1), (2).

In this instance, limitations commenced on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.*, § 2244(d)(1)(D). As correctly argued by respondent, the "Certificate of Parole" given to petitioner upon his release in 1993 expressly notified him, in bold-faced type, that revocation of his parole would result in forfeiture of all time he served on parole. (Docket Entry No. 16, Exhibit B.) Further, petitioner signed the document immediately below his affirmation that, "I further understand and do agree that in the event of revocation of this release on Parole, time spent on Parole will <u>not</u> be credited to my sentence." *Id.* (original emphasis). Thus, the one-year limitation commenced on December 31, 1999, the date petitioner's parole was revoked and his street time forfeited, and expired one year later

on December 31, 2000, barring application of statutory tolling. However, petitioner is not entitled to statutory tolling, as his administrative time credit dispute resolution proceeding was filed in 2002, well *after* expiration of limitations, and had no tolling effect. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999).

Even under a more conservative analysis, petitioner unequivocally was aware of the loss of his street time credit when he filed his administrative time credit dispute resolution proceeding on June 26, 2002. Assuming that limitations commenced on that date and that petitioner's administrative dispute proceeding tolled limitations during its four month pendency, the instant habeas petition would remain untimely and barred by limitations. In the alternative, assuming limitations commenced upon conclusion of the administrative proceeding, limitations expired in October of 2003.

Equally unavailing is petitioner's argument that limitations did not commence until his filing of this petition when another inmate told him that his release to parole had been in violation of state law. (Docket Entry No. 24, p. 5.) Ignorance of the law does not toll the commencement or running of limitations. *See U.S. v. Petty*, 530 F.3d 361, 365-66 (5th Cir. 2008). Nor does petitioner present probative summary judgment evidence as to applicability of sections 2244(d)(1)(B) or (C).

In absence of probative summary judgment evidence establishing factual support for equitable tolling, petitioner's claims are barred by limitations.

4

**B.      Equitable Tolling**

Respondent contends that, following the Supreme Court's decision in *Bowles v. Russell*, federal district courts can no longer apply equitable tolling to statutory time limitations such as the AEDPA limitation. 551 U.S. 205, 127 S. Ct. 2360, 2366 (2007) ("Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate."). The Fifth Circuit Court of Appeals, however, continues to recognize the applicability of equitable tolling to the AEDPA limitation, as the AEDPA limitations provision is not jurisdictional. *See Petty*, 530 F.3d at 364 n.5; *Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003) (holding that the one year AEDPA limitation is non-jurisdictional).

A habeas petitioner is not entitled to equitable tolling unless he establishes that he pursued his rights diligently, and that some extraordinary circumstance stood in his way to prevent timely filing. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). The petitioner bears the burden of proving the existence of rare and exceptional circumstances which warrant equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Petitioner asserts that he is entitled to equitable tolling of the one-year limitation because he is deaf, mentally retarded, and proceeding *pro se*. However, equitable tolling is not required simply because a petitioner is unfamiliar with the legal process, proceeding *pro se*, deaf, or illiterate. *Felder v. Johnson*, 204 F.3d 168, 171, 173 (5th Cir. 2000); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

Petitioner's claim of mental retardation or other non-specific cognitive impairment requires separate analysis.  The Fifth Circuit has held that certain mental impairments may potentially give rise to grounds for equitable tolling, provided the petitioner proves up both the impairment and that it affected his ability to file a timely habeas petition.  If a petitioner proves some degree of mental impairment, he must then prove that the impairment prevented his timely filing; proof of both elements is imperative.  *See, e.g., Robinson v. Johnson*, 2000 WL 821450 (5th Cir. 2000) (unpublished) (holding that equitable tolling did not apply based on petitioner's alleged mental incapacity where he failed to submit any evidence that his mental condition impaired his ability to file a timely federal habeas petition); *Smith v. Johnson*, 2001 WL 43520 (5th Cir. 2001) (unpublished) (holding that petitioner failed to allege sufficient facts to support his claim that mental incompetence impeded him from timely asserting his habeas rights).

In the instant case, respondent correctly argues that petitioner fails to present probative summary judgment evidence of either a mental impairment or that such impairment prevented his timely filing.  Nor does this Court's independent review of the record as a whole reveal support for petitioner's assertions.  In a letter dated October 24, 2008, petitioner reported that he contracted bacterial meningitis following his evacuation from the Harris County Jail during Tropical Storm Allison in June of 2001, and that brain damage from the infection left him deaf.  (Docket Entry No. 17, p. 1.)  Elsewhere, petitioner asserted that he is mentally retarded (Docket Entry No. 1, p. 8) or mentally challenged (Docket Entry No. 14),

6

without further disclosure or explanation. In requesting equitable tolling, petitioner provides nothing beyond these unsupported, conclusory allegations, which allegations are insufficient to raise a genuine issue of material fact precluding summary judgment. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

The Court takes judicial notice that petitioner's complaints regarding his post-evacuation meningitis and resulting deafness have been before the Court on numerous prior occasions, without any assertions of cognitive impairment. On July 8, 2002, petitioner filed a *pro se* section 1983 lawsuit against Harris County seeking damages for his meningitis and resulting deafness. *Williams v. Harris County*, C.A. No. H-02-2559 (S.D. Tex. 2004). In that lawsuit, petitioner asserted that he had "no problems" prior to contracting meningitis in 2001. In granting summary judgment and dismissing the lawsuit on March 11, 2004, the Court noted that petitioner had been a maximum security inmate with no identified medical restrictions prior to contracting meningitis. *Id.*, Memorandum and Opinion, at 8. His jail medical records showed that, as of June 13, 2001, he was physically healthy and had undergone a routine pre-trial screening to evaluate his mental condition. *Id.* at 11. He was diagnosed with meningitis on June 27, 2001. *Id.* at 8. Although he complained that the meningitis left him deaf and gave him a "mental problem," he never claimed, and there was no finding, that he was mentally retarded or cognitively impaired either before or after the meningitis infection.

7

For over two years after the Court's dismissal of that lawsuit, petitioner continued sending protest and complaint letters to the Court. *Id.*, Docket Entries No. 29, 20, 31, 32, 33, 34. In his letters, petitioner complained that, because of the meningitis, he was permanently deaf and required seizure medication. He further complained that the courts were against him because of his race and deafness. In none of these communications did petitioner complain of mental retardation or other cognitive mental impairment.

Petitioner filed a second *pro se* section 1983 lawsuit on December 10, 2004, following dismissal of the first lawsuit. *Williams v. Love*, C.A. No. H-04-4701 (S.D. Tex. 2006). In that lawsuit, petitioner raised claims for use of excessive force. Although petitioner again referenced his deafness in several letters to the Court, he made no mention of mental retardation or other cognitive impairment. Petitioner requested appointment of counsel due to a "serious medical condition" that prevented him "from comprehending said proceedings" and entitled him to use of an interpreter. *Id.*, Docket Entry No. 26, p. 2. The nature of the medical condition was not explained within the motion, but in his reply to defendants' motion for summary judgment in that case, petitioner stated that, "My medical records from L.B.J. will show that I am deaf and the way I talk (sic)." *Id.*, Docket Entry No. 32, p. 1. He further stated that, "You have my medical record. I have took 4 hearing test[s] by UTMB audiologist." *Id.*, p. 4. As before, there was no mention of mental retardation or any loss of mental cognitive capacity. Following the dismissal of the lawsuit on June 6, 2006, petitioner sent three letters to the Court. In the first letter, petitioner informed the Court that, "You

8

should have evaluated meningococcal meningitis in 2001 when I was in county jail.  I have brain damage that's why I am deaf and a little mental." *Id.*, Docket Entry No. 35, p. 1.  He opined his belief that he lost his first lawsuit because of his deafness. *Id.*, p. 2.

Petitioner filed a third section 1983 lawsuit in November of 2007. *Williams v. Valenti*, C.A. No. H-07-4063 (S.D. Tex.).  Although that lawsuit, too, raised claims for use of excessive force, petitioner again emphasized the 2001 meningitis infection and how "brain damage" from the infection caused him to lose his hearing. *Id.*, Docket Entry No. 1, p. 5. As relief, he requested $200,000.00 "so I can start over in life[.] I am deaf." *Id.*, p. 3.  He again complained that his two prior *pro se* lawsuits were dismissed because of his deafness. *Id.*, p. 9.  In a letter to the Court, petitioner requested "a lawyer under ADA because I am deaf with brain damage. Record would show that." *Id.*, Docket Entry No. 7, p. 2. In another letter, petitioner reported that, "Because of this unit I am still locked up because of my handicap. I am deaf from meningitis in [jail] flood June 9, 2001." *Id.*, Docket Entry No. 14, p. 2.  In a letter dated March 6, 2008, petitioner wrote, "I am deaf please give me a lawyer under [the] ADA." *Id.*, Docket Entry No. 19, p. 2.

These lawsuits evince that, over the past six years, petitioner has consistently asserted through litigation that he is deaf due to brain damage sustained from bacterial meningitis, without claim of mental retardation or cognitive impairment.  To the contrary, the very existence of these earlier lawsuits negates any assertion that mental retardation or cognitive impairment precluded petitioner's timely pursuit of the instant lawsuit. This Court is guided

9

by unpublished opinions of the Fifth Circuit Court of Appeals holding that a litigant is not

entitled to equitable tolling on grounds of mental impairment if the litigant pursued other

litigation during the relevant time period. In *Pena v. Johnson*, the Fifth Circuit held that:

> The record evidence shows that [petitioner] had mental health problems and
> was adjudged in a 1993 state court civil proceeding to be incapable of handling
> his financial affairs. However, there is also evidence in the record which
> indicates that [petitioner's] condition did not prevent him from pursuing his
> habeas rights during the relevant time period, April 24, 1996 through April 24,
> 1997.   Consequently, the district court did not abuse its discretion in
> determining that equitable tolling was unwarranted in this instance.

37 Fed. App'x. 91 (5th Cir. 2002) (footnotes omitted).   *See also Smith v. Kelly*, 301 Fed.

App'x. 375 (5th Cir. 2008) (upholding denial of equitable tolling where habeas petitioner had

filed other state court proceedings during time of purported incapacity).

Courts within the Fifth Circuit's jurisdiction also have denied equitable tolling to

petitioners who were plainly able to manage their legal affairs during their alleged incapacity.

*See, e.g., White v. Quarterman*, No. H-07-2039, 2007 WL 4223491, at *3 (S.D. Tex. 2007)

(holding that petitioner "fails to provide necessary details showing that his mental

impairment prevented him from managing his affairs or understanding his legal rights");

*Hennington v. Johnson*, No. 4:00-CV-0292-A, 2001 WL 210405, at *4 n.9 (N.D. Tex. 2001)

(observing that petitioner's various lawsuits during the period for which he sought tolling

belied any claim that his mental illness prevented him from managing his legal affairs); *see*

*also Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (holding equitable tolling

10

unwarranted where petitioner was able to file state habeas applications before and after the limitations period).

Petitioner's own allegations establish that any cognitive mental impairment followed his June 2001 meningitis infection; he neither requests nor potentially merits equitable tolling prior to that time. Further, petitioner filed an administrative time credit dispute resolution proceeding on June 26, 2002, a *pro se* federal civil rights lawsuit on July 8, 2002, a second *pro se* federal civil rights lawsuit in 2004, and a third such lawsuit in November of 2007 prior to filing the instant lawsuit in July of 2008. Accordingly, he likewise is not entitled to equitable tolling *after* his 2001 bout of meningitis. In short, petitioner's pleadings and litigation history evince no applicable period of mental impairment relative to the instant lawsuit for purposes of equitable tolling.

Under the facts and circumstances shown both by the record in this case and by matters appearing of public record, this Court concludes that petitioner is not entitled to equitable tolling. This pending petition is barred by limitations.

### C.    "Void" Release to Parole

Petitioner asserts, in the alternative, that limitations is an irrelevant issue because his release to parole in 1993 was void *ab initio*. In support, petitioner circuitously argues that, because under Article IV, section 11 of the Texas Constitution only the Governor of Texas can grant an inmate clemency or an early discharge of a sentence, petitioner's release to

11

parole by the Texas Board of Pardons and Paroles (the "Board") constituted a grant of clemency in violation of the Texas Constitution. (Docket Entry No. 25, p. 2.)

That the Board's 1993 grant of parole did, or did not, violate the Texas Constitution is not an issue for this Court. Only issues involving federal constitutional or statutory rights will give rise to a cognizable federal habeas claim. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding that a federal court may not issue a habeas writ on the basis of a perceived error of state law).

Texas state inmates do not enjoy a federally-protected liberty interest in parole. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Although a state inmate may have a federally-protected liberty interest in street time credit following parole revocation if he was erroneously released to parole, *see Thompson v. Cockrell*, 263 F.3d 423 (5th Cir. 2001), the erroneous release to parole itself does not give rise to a federal constitutional issue. To any extent that petitioner's purportedly "void" release to parole in 1993 gave rise to a federally-protected liberty interest in his accrued street time credit following revocation, the Court has already determined that his habeas claim regarding such loss is barred by limitations under section 2244(d)(1)(D).

## III.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 16) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH**

**PREJUDICE** as barred by limitations.  A certificate of appealability is **DENIED**.  Any and all pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 24th day of August, 2009.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

13